990 A.2d 1158

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Dennis C. REED, Appellant.**

Supreme Court of Pennsylvania.

Submitted July 13, 2009.

Decided March 25, 2010.

Randall Thomas Hetrick, for Reed, Dennis C.

John J. Bongivengo, Thomas W. Minett, Lawrence County District Attorney's Office, Amy Zapp, PA Office of Attorney General, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice SAYLOR.

This is a capital direct appeal deriving from the killing of Wendy Miller, the mother of Appellant's child, on December 16, 2001.

In the relevant time period, Appellant committed crimes in both Lawrence and Butler Counties. Initially, he was tried and convicted on drug and firearms charges in Butler, with the instant litigation ensuing in Lawrence, on charges of first-degree murder, kidnapping, interference with custody of children, as well as related offenses. In the Lawrence County proceedings, Appellant filed a motion to quash the charges, invoking the compulsory joinder statute, *see* 18 Pa.C.S. § 110, in light of the previous convictions. The motion was denied, and Appellant also pursued an unsuccessful pre-trial motion to suppress.

Appellant was then tried; convicted of first-degree murder, kidnapping, interference-with-custody, and related offenses; and sentenced to death upon the jurors' finding of two aggravating circumstances and no mitigating ones. Appellant filed post-sentence motions, which the trial court denied, and this direct appeal followed, with Appellant's trial counsel also serving as his attorney on direct appeal.

### Evidentiary Sufficiency

■ We begin with a review of the sufficiency of the evidence to support the first-degree murder conviction, which we review in all capital cases even if (as here) such matter is not raised by the appellant.

■ To obtain a first-degree murder conviction, the Commonwealth must prove that a human being was unlawfully killed, the defendant perpetrated the killing, and the defendant acted with malice and a specific intent to kill. *See* 18 Pa.C.S. §§ 2501, 2502(a); *Commonwealth v. Sanchez*, 589 Pa. 43, 58, 907 A.2d 477, 486 (2006) (citing *Commonwealth v. Collins*, 550 Pa. 46, 50, 703 A.2d 418, 420 (1997)). When reviewing sufficiency to support a jury's findings to this effect, this Court determines whether the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt. *See Commonwealth v. Cousar*, 593 Pa. 204, 217, 928 A.2d 1025, 1032 (2007) (citing *Commonwealth v. Crews*, 436 Pa. 346, 348, 260 A.2d 771, 771–72 (1970)). In applying this standard, we bear in mind that the Commonwealth may sustain its burden by means of wholly circumstantial evidence; that the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and that the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence. *See id.*, 928 A.2d at 1032–33; *Commonwealth v. Chmiel*, 585 Pa. 547, 574, 889 A.2d 501, 517 (2005).

In its case-in-chief, the Commonwealth developed that Ms. Miller was a mother of four—in addition to Appellant's son, Markece, she had three minor children fathered by Mark McKnight. Markece testified that, throughout a portion of the months preceding the killing, Appellant lived with Ms. Miller and the children in her apartment. Further, Markece related that Appellant threatened Ms. Miller's life and physically abused her during this time period. The Commonwealth also introduced evidence that Ms. Miller secured temporary protection from abuse orders from the common pleas court in October and December 2001.

Ms. Miller's daughter, Jayla McKnight, testified that, on the night on which her mother was killed, Appellant appeared at the apartment, hit Ms. Miller repeatedly, and removed her from the premises. Further, Jayla indicated that, when Ms.

Miller reappeared momentarily with Appellant, she told the three McKnight children to dress;[1] the group entered the victim's sport-utility vehicle; and Appellant drove to Neshannock Village, a local housing project. According to the witness, Appellant and Ms. Miller left the children in the vehicle and walked away, with Appellant sliding a pistol-grip shotgun into his pants. Jayla also related that Appellant returned alone twenty minutes later, telling the children that their mother left for work; he then took the children to Butler County, where they lived largely out of the vehicle for approximately one week.

From the witness stand, police officers discussed their subsequent efforts to locate Appellant and Ms. Miller's vehicle, which was spotted eventually in Butler County, where Appellant was taken into custody. Officers also confirmed that the McKnight children were in the vehicle, as was a 12–gauge shotgun containing a spent casing consistent with a slug load. Additionally, live and spent shotgun rounds were found on Appellant's person.

Officers and Ms. Miller's brother, Charles Miller, explained that, with the information they learned from the McKnight children, they searched the Neshannock Village area. Eventually Mr. Miller and some friends located Ms. Miller's body in a wooded area accessible from a roadway extension. A medical examiner described the nature and extent of the fatal wound, which was caused by a close-range discharge of a slug from a shotgun. Police also testified to recovery of a small stain sample from Appellant's clothes, which a forensic specialist identified as containing a genetic marker consistent with the victim's blood. Further, based on a DNA examination, a specialist in that field found a very high statistical probability of a match between the material and a sample of Ms. Miller's blood.[2]

1. Appellant's own son was staying with an uncle at the time.

2. The defense presented no evidence at the guilt phase of trial. Parenthetically, at the penalty phase, Appellant testified that he abused drugs and alcohol to suppress mental-health issues in the relevant time period. He said that he did not recall anything about Ms. Miller's

While Appellant is the only living witness to the actual killing, as developed above, the Commonwealth presented strong circumstantial evidence implicating him as the killer. Moreover, the manner of death, entailing a close-range shot to the head, is indicative of the requisite malice and specific intent to kill.

The evidence was sufficient to support the first-degree murder conviction.

## Suppression

■ In Appellant's first claim, he challenges the pretrial suppression ruling. However, he offers no supporting argument in his brief, but, instead, concedes that he has found no authority refuting the suppression court's findings. Nevertheless, Appellant asks us to review the suppression court's findings, since the appeal is of a death sentence implicating an automatic right of review.

The special review to which Appellant refers, however, is limited to the sufficiency of the evidence and screening for arbitrariness, passion, or prejudice. *See, e.g., Commonwealth v. Appel,* 517 Pa. 529, 532, 539 A.2d 780, 781 (1988). Otherwise, at least in the absence of extraordinary circumstances not present here, Appellant bears the ordinary issue preservation and presentation responsibilities. *Cf. Commonwealth v. Freeman,* 573 Pa. 532, 560–63, 827 A.2d 385, 402–03 (2003) (reflecting the curtailment of the relaxed waiver doctrine in capital direct appeals). Accordingly, in the absence of a developed argument concerning the suppression ruling, no relief is available on Appellant's first claim.

## Compulsory Joinder

■ By way of background, the compulsory joinder rule, codified at Section 110 of the Crimes Code, *see* 18 Pa.C.S. § 110, barred subsequent prosecutions on account of former ones where, among other things, a later prosecution was: for

disappearance or killing, albeit he knew he was with the McKnight children in Butler County when he was arrested. *See* N.T., Feb. 1, 2008, at 53–54.

an offense arising from the same criminal episode and within the jurisdiction of a single court. *See* 18 Pa.C.S. § 110(1)(ii) (superseded). In 2002, however, the Legislature amended the statute to condition the operation of Section 110(1)(ii) on the occurrence of the later offense within the same judicial district as the former prosecution, supplanting the single-court jurisdiction concept as it was broadly construed in *Commonwealth v. McPhail*, 547 Pa. 519, 692 A.2d 139 (1997) (plurality). *See* 18 Pa.C.S. § 110. *See generally Commonwealth v. Fithian*, 599 Pa. 180, 198–99, 961 A.2d 66, 76–77 (2008). Further, this Court has clarified that such amendment was "intended to preclude from the reach of the compulsory joinder statute those current offenses that occurred wholly outside of the geographic boundaries of the judicial district in which the former prosecution was brought, *even though part of a single criminal episode.*" *Id.* at 199, 961 A.2d at 77 (emphasis added).[3] Presumably given the substantial disadvantage posed by the amendment, Appellant took the position that the terms of pre-amendment Section 110 controlled, since his offenses occurred prior to the modification.

By way of further background, the Butler County convictions arose out of Appellant's possession, on his person, of a loaded handgun and illicit drugs at the time he was located and arrested by police in the vicinity of Ms. Miller's vehicle containing the McKnight children. *See Commonwealth v. Reed*, Nos. 10, 11, 12, and 96 of 2002, *slip op.* at 5 (C.P. Lawrence, June 2, 2005) (*"Reed I "*). Notably, it appears the Lawrence County prosecutor assiduously avoided reference to the handgun and drugs, which were the subject of the Butler prosecution. *See, e.g.,* N.T., Jan. 29, 2008, at 27–28. Nevertheless, Appellant took the position that the Butler convictions foreclosed the Lawrence proceedings, since, in his view, both

3. Parenthetically, *Fithian* also clarified that the compulsory joinder statute, as amended, "extends to those offenses which occurred in more than one judicial district, when one of those judicial districts was where the former prosecution was brought." *Fithian*, 599 Pa. at 200, 961 A.2d at 77. Here, there is no suggestion that Appellant's actual offenses for which he was prosecuted in Butler County also occurred in Lawrence—his argument is entirely that both sets of offenses were part of a single criminal episode.

prosecutions derived from a single criminal episode and the occurrence-based, single-judicial-district litmus was inapplicable (as it was added to the statute after his offenses).

The common pleas court applied the post-amendment version and rejected Appellant's claim. *See Reed I*, Nos. 10, 11, 12, and 96 of 2002, *slip op.* at 7. In the portion of its opinion addressing Appellant's position that the Butler and Lawrence crimes were encompassed within a single criminal episode, the court explained that its task was to examine the temporal and logical relationship between the criminal acts, *see id.* at 3–4 (citing *Commonwealth v. Hockenbury*, 549 Pa. 527, 533, 701 A.2d 1334, 1337 (1997) ("[W]hat is required is a substantial duplication of issues of law and fact." (citation omitted))), while remaining mindful of the purpose and rationale underlying Section 110. The relevant policy considerations, the court noted, were the protection of the accused from government harassment through serial prosecution pertaining to connected offenses and the promotion of judicial economy. *See Commonwealth v. Nolan*, 579 Pa. 300, 310, 855 A.2d 834, 840 (2004). Additionally, the court also observed this Court's admonition to be wary of "volume discounting" of multiple crimes. *Reed I*, Nos. 10, 11, 12, and 96 of 2002, *slip op.* at 3 (citing *Nolan*, 579 Pa. at 309, 855 A.2d at 839).

Examining the facts of the present case, the court discerned no substantial duplication of the factual or legal issues between the Butler and Lawrence prosecutions, reasoning:

The logical and temporal relationship between the charges in Butler County and the charges in Lawrence County are de minimus. The investigations were performed by two separate police departments and the proof required for the crimes does not rest solely on the credibility of a single witness. The charges currently before this Court will require the Commonwealth to call a significant number of material witnesses that were not required for the charges in Butler County. Such witnesses as the children of the victim, family members who reported the victims missing, the individual who located the body of the victim, the pathologist who conducted the autopsy on the victim, ballis-

tics experts, records witnesses regarding vehicle ownership, and the New Castle Police Officers who conducted the search and investigation of the charges will be required to prove the charges against Defendant that are now before this Court.

\* \* \*

The charges in Butler County dealt with the illegal possession of a firearm, a handgun unrelated to the murder, and possession of [a] controlled [ ] substance. The charges before this Court do not entail the possession of the handgun or the possession of drugs. The charges in Lawrence County deal with murder and kidnapping.... This Court will not interpret this section to permit a "volume discount" on Defendant's charges.

*Reed I,* Nos. 10, 11, 12, and 96 of 2002, *slip op.* at 5–6 (citations omitted).

On Appellant's interlocutory appeal, however, the Superior Court initially questioned the common pleas court's application of the Section 110 amendment, characterizing such application as "tenuous." *See Commonwealth v. Reed,* No. 1158 WDA 2005, *slip op.* at 5 & n. 2, 903 A.2d 50 (Pa.Super. May 9, 2006). The court proceeded to assume, *arguendo,* that the pre-amendment version of the statute applied and approved the common pleas court's position that the Butler and Lawrence offenses did not stem from a single criminal episode. *See id.* at 5–7.

Upon our review, we find the approach to the concept of a single criminal episode reflected in the previous judicial opinions to be correct, and we adopt it here. Although there is a temporal connection between Appellant's continuing offenses initially committed in Lawrence and the firearms and drug offenses committed in Butler, Appellant has established no deeper logical connection. For example, he does not argue that the handgun or drugs were in any way used to restrain the children or had any other relevance to the major offenses prosecuted in Lawrence. Rather, he argues only that police located items of evidence used in the Lawrence County prose-

cution at the same time they obtained the evidence supporting the Butler prosecution. *See* Brief for Appellant at 22. This, we hold, is not a sufficient logical connection to support casting the Butler and Lawrence offenses as arising out of a single criminal episode or, correspondingly, to implicate the requirement of compulsory joinder. In point of fact, the strong logical connection in the case is among the offenses which were joined and prosecuted in Lawrence, involving Appellant's killing of Ms. Miller and his abduction of the McKnight children.

Since Appellant's argument does not prevail on its terms, like the Superior Court, we will defer decision concerning the application of the amended terms of Section 110 to previous crimes. Our approach, in this respect, is also in light of the very modest development of the parties' legal arguments (particularly Appellant's) on the salient point.

## Voir Dire

Appellant's next two claims on appeal center on the juror *voir dire*. First, after one particular prospective juror was accepted by both the Commonwealth and Appellant, he asked to speak to the trial judge at sidebar. There, the venireperson advised that he lived primarily in Ohio, although he returned frequently to Pennsylvania to stay at his parents' residence in Lawrence County. Over Appellant's objection, the Commonwealth exercised a peremptory challenge, "because of the uncertainty of the nature of [the prospective juror's] actual residence." N.T., Jan. 22, 2008, at 8.

Appellant invokes Criminal Procedural Rule 631(E)(1)(b), which prescribes, *inter alia*, that, "[o]nce accepted by all parties, a prospective juror shall not be removed by peremptory challenge." Pa.R.Crim.P. 631(E)(1)(b). Appellant argues that the trial court violated this rule in the above instance, since it permitted the Commonwealth to exercise a peremptory challenge after acceptance. According to Appellant, the prosecutor should have been forced to challenge for cause to secure the removal.

The trial court rejected Appellant's position based on *Chmiel*, 585 Pa. at 547, 889 A.2d at 501. *See Commonwealth v. Reed*, Nos. 10, 11, 12, and 96 of 2002, *slip op.* at 11 (C.P.Lawrence, Feb. 17, 2009) ("*Reed II* ") ("The authority of this Court to allow further *voir dire* and the exercise of a peremptory challenge [after acceptance] based on the volunteered comments of the prospective juror is clear by the decision of [*Chmiel* ].").

As noted by the trial court and, presently, the Commonwealth, we have not strictly construed the relevant terms of Rule 631(E)(1)(b). Rather, this Court has explained that the language "must be read in context of the other requirement in the rule that peremptory challenges are to be used only after the prospective juror is examined." *Chmiel*, 585 Pa. at 580, 889 A.2d at 520 (citing Pa.R.Crim.P. 631(E)(1)(b)). Thus, in *Chmiel*, this Court determined that the allowance of peremptory challenges remained within the trial court's discretionary prerogative, even after the parties' initial acceptance of a juror, where additional information subsequently came to light. *See Chmiel*, 585 Pa. at 581, 889 A.2d at 520–21.

Here, Appellant fails to address *Chmiel*, the authority relied on by the trial court in its disposition. Since the mechanical application of a post-acceptance prohibition against peremptory challenges has been disapproved previously, and Appellant offers no other basis to support his claim, no relief is due.

█ Additionally, Appellant challenges the removal of a second prospective juror who also was accepted, initially, by both parties. This venireperson later contacted the trial judge's chambers (at a point in time after three additional jurors had been selected) to express reservations about his ability to return a death sentence, apparently after speaking with his priest.[4] Over a defense objection, the venireperson was excused for cause. The defense then requested additional

---

4. *See* N.T., Jan. 22, 2008, at 11 ("After considering the matter and consulting our family priest, I don't think I could vote in favor of the death penalty."); *id.* at 18 ("No. The way I sit today …, I would not be able to vote in favor of the death penalty.").

peremptory challenges and moved for a mistrial, which the court denied.

Appellant develops that, when the matter initially arose during the *voir dire* proceedings, his counsel argued that some remedial measure should be implemented to protect his fair-trial right in light of the untimely disclosure of the venireperson's disability. He focuses on two alternatives suggested by defense counsel to the trial court. First, counsel requested the defense be allowed six additional peremptory challenges (which counsel indicated would restore the status quo as of the time of the initial approval as a juror). Alternatively, counsel requested that the venireperson in question be retained on the jury pending the selection of a full jury complement, and that he simply be replaced with an alternate immediately after administration of the jurors' oath. Finally, Appellant moved for a mistrial based on the timing of the removal of one who previously was accepted by the parties as a juror.

Initially, Appellant acknowledges that challenges for cause may be exercised at any time before a jury begins to deliberate. *See* Pa.R.Crim.P. 631(E)(1)(b); *Commonwealth v. Proctor*, 526 Pa. 246, 258, 585 A.2d 454, 460 (1991). Moreover, he concedes that a trial court presiding over first-degree murder proceedings lacks discretion to expand the number of peremptory challenges afforded under governing rules. *See* Pa. R.Crim.P. 634(A)(3); *Commonwealth v. Edwards*, 493 Pa. 281, 288, 426 A.2d 550, 553 (1981). Nevertheless, relying on *Commonwealth v. Johnson*, 299 Pa.Super. 172, 445 A.2d 509 (1982), Appellant contends the trial court was bound to accept one of his proposed alternatives. Appellant's argument proceeds as follows:

[A]t the time [the venireperson] was selected as a juror, the Appellant had only exercised fourteen (14) peremptory challenges and had six (6) remaining. At the point at which [the venireperson] was removed from the jury for cause, the Appellant only had one (1) challenge remaining and therefore was clearly prejudiced. The Appellant was later forced to accept a juror who on which [sic] he would have exercised a peremptory challenge had he had more than one peremp-

tory challenge available to him at the time he was forced to strike that juror. In the instance, the Appellant was not forced to exercise a peremptory challenge on [the venireperson later excused for cause] but he was forced to exercise one later on a juror that he would not have accepted for the panel. This is basically the same outcome.

Brief for Appellant at 11.

The Commonwealth, for its part, observes that Appellant does not challenge the trial court's decision to excuse the venireperson for cause or the conduct of the prosecutor in lodging the challenge. According to the Commonwealth, Appellant's claim is merely an attempt to capitalize on unforeseen circumstances to secure advantages not implicated by the relevant rules of procedure or principles of law. Like the trial court, the Commonwealth distinguishes the Superior Court's *Johnson* decision, since, there, the defense was disadvantaged by an erroneous ruling by the presiding trial court denying its own challenge for cause, and, thus, forced to expend a peremptory challenge that it otherwise would have retained for later use. *See Johnson,* 299 Pa.Super. at 182, 445 A.2d at 514. The Commonwealth stresses that there was no similar error by the trial court in the present case. *Accord Reed II,* Nos. 10, 11, 12, and 96 of 2002, *slip op.* at 16 ("[H]ere, unlike the situation in *Johnson,* defendant cannot show prejudice because defendant was not required to utilize a peremptory challenge on a juror who should have been stricken for cause.").

We agree with the Commonwealth that *Johnson* is distinguishable for the reasons stated; the trial court's approach at the *voir dire* stage in the present proceedings merely reflects adherence to the applicable rules and legal precedent; and the court was not required to accept one of Appellant's proposals or to award a mistrial.

## Trial

Appellant raises a series of evidentiary challenges. First, he finds fault in the trial court's decisions to admit evidence of the temporary protection from abuse order secured by Ms. Miller in October 2001, and to permit two

witnesses to testify that she was physically abused by Appellant. Appellant relies, in the first instance, on the prohibition against the admission of evidence of prior bad acts to demonstrate action in conformity with such conduct. *See* Pa.R.E. 404(b)(1). After recognizing that prior-bad-acts evidence may be admitted for other purposes, such as to establish motive, intent, or identity, *see* Pa.R.E. 404(b)(2), Appellant alludes to the general prohibition against hearsay evidence. *See* Brief for Appellant at 12. After this reference, Appellant's argument takes on a "remoteness" focus. He explains that he offers no challenge to the admission of evidence of the temporary protection from abuse order secured by Ms. Miller in December 2001, three days before she was killed. Nevertheless, it is Appellant's position that the October 2001 order, having been granted two and one-half months before the murder, "is too remote in time in order to be properly used as evidence against the Appellant to show his state of mind at the time of the homicide on December 16, 2001." *Id.* at 13. According to Appellant, the same argument applies to the testimony of Commonwealth witnesses concerning abuse within the same time period. *See id.* ("It is the Appellant's position that the October 1, 2001 PFA and any testimony pertaining to any alleged abuse at that time is clearly too remote in time to be used against the Appellant to show his state of mind for a homicide that occurred approximately two and a half (2½) months later.").

█ As a general rule, questions concerning the admissibility of evidence are committed to the sound discretion of the trial judge, whose rulings will not be disturbed on appeal absent an abuse of that discretion. *See Commonwealth v. Kennedy*, 598 Pa. 621, 633, 959 A.2d 916, 923 (2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 2433, 174 L.Ed.2d 229 (2009). The hearsay aspect of Appellant's claim is undeveloped and, accordingly, unreviewable at the present time. *See Commonwealth v. Sherwood*, 603 Pa. 92, 112, 982 A.2d 483, 496 (2009) (deeming a similarly underdeveloped one-sentence hearsay argument waived). In terms of remoteness, this Court has indicated that this generally affects the weight—but not the

admissibility—of the evidence; further, the Court has emphasized the deference due to the trial court in the exercise of its discretion. *See Commonwealth v. Ulatoski,* 472 Pa. 53, 62–64, 371 A.2d 186, 191–92 (1977) (citing *Commonwealth v. Petrakovich,* 459 Pa. 511, 524, 329 A.2d 844, 850 (1974)).[5]

Appellant's position that there should be a bright-line threshold for remoteness somewhere short of two and one-half months is plainly unsupported in the cases. As a salient example, the trial court aptly referenced *Ulatoski,* 472 Pa. at 64, 371 A.2d at 192 (finding no abuse of discretion in the admission of evidence of bruising on a homicide victim—who was the defendant's wife—occurring as much as seventeen months before her death, particularly as the evidence indicated a pattern of physical abuse). *See also Commonwealth v. Drumheller,* 570 Pa. 117, 137–39, 808 A.2d 893, 905–06 (2002) (approving admission of evidence of four protection from abuse petitions filed by a homicide victim against the defendant in the thirty-four months preceding the victim's murder).

■ Next, Appellant challenges the testimony of the victim's mother, Darlene Pounds. Appellant explains that the Commonwealth employed this evidence to provide background about the relationship between Appellant and Ms. Miller. According to Appellant, Ms. Pounds did not offer any testimony relevant to a determination of guilt or innocence, with the exception of a few questions and answers pertaining to the witness's observation of Appellant and the victim together shortly before the murder. Appellant complains that, as the source was the victim's mother, the evidence served only to engender undue sympathy from jurors.

In reply, the Commonwealth asserts that the prosecutor offered Ms. Pounds' testimony at the earliest opportunity to provide background by developing the names and relationships of witnesses, as well as relevant facts. The Commonwealth observes:

5. Of course, under our evidentiary rules, relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, cumulativeness, or other similar factors. *See* Pa.R.E. 403.

[Ms. Pounds] was the grandmother of the victim's four children and identified those children by name and by who was the father of each. She knew and identified the Defendant. She explained the victim's, Wendy's, living arrangements and her work. She discussed having dinner at her home Thursday before the murder with the victim, Wendy's four children, and her son, Charles, present. Who left with whom from that get together was significant to later events. She described a shopping trip by Wendy and herself a day later on Friday. The victim wanted to purchase an out-fit to wear to her work Christmas party being held that night. The victim was wearing the clothing purchased on that trip at the time she was found after her murder. Darlene Pounds explained her observations of the Defendant approaching their vehicle during that shopping trip. She also explained the lack of contact with Wendy for the next two days—Saturday and Sunday. Darlene recalled receiving a call from Wendy's employment on the following Monday morning inquiring about Wendy's failure to be at work. She explained that the call from Wendy's work initiated contacts that involved the police into the matter. Darlene finally explained that she retrieved the three youngest children of Wendy from the Butler police after the arrest of Defendant by Butler police.

Brief for the Commonwealth at 33–34. According to the Commonwealth, the above demonstrates that the prosecutor utilized Ms. Pounds' testimony for limited, permissible purposes of establishing background and "time-frame facts," and there was no effort to elicit sympathy or emotion through the presentation. *Id.* The trial court essentially accepted this argument on its terms.

We agree with the trial court and the Commonwealth that nothing in Appellant's argument demonstrates an abuse of discretion in the court's decision to admit relevant evidence via Ms. Pounds' testimony. Moreover, upon our review of the record, we also discern no attempt on the part of the prosecutor to use the evidence for an improper purpose.

Next, Appellant mounts a similar challenge to testimony adduced by the Commonwealth from a forensic specialist. Appellant complains that the witness was improperly permitted to testify that, although cartridges recovered from Appellant and the shotgun recovered from Ms. Miller's vehicle were not tested for fingerprints, the state police had been unable to recover fingerprints from such cartridges in other cases. According to Appellant, the evidence was irrelevant and encouraged the jurors to infer that there were no fingerprints on the cartridges recovered by police in the present case.

Again, we are not persuaded that the trial court abused its discretion in permitting the Commonwealth to offer some explanation concerning the absence of fingerprint evidence, which jurors exposed to modern media may tend to anticipate. *Accord United States v. Pruitt,* 300 Fed.Appx. 853, 856 (11th Cir.2008) ("Pruitt was accused of possessing a gun, but he did not leave an identifiable fingerprint on it; therefore, evidence about how certain persons touched the gun without leaving fingerprints on it is relevant to show that whether Pruitt left a fingerprint on the gun is not dispositive of whether he possessed it."). Further, we differ with Appellant's argument that the probative value of the evidence was outweighed by its prejudicial impact.

Next, Appellant argues that the trial court erred in permitting testimony of a police officer, on redirect examination, indicating that Appellant gave a false name when he was apprehended. According to Appellant, the matter was outside the appropriate scope of cross-examination and was highly prejudicial. As the Commonwealth develops, however, on cross-examination defense counsel asked the officer whether Appellant "g[a]ve you any problems at all?" N.T., Jan. 29, 2008, at 64. Accordingly, it was not an abuse of discretion for the trial court to permit the Commonwealth to develop, on redirect, that Appellant gave a false name, since this bore relevance to the degree of Appellant's cooperation. *Accord Reed II,* Nos. 10, 11, 12, and 96 of 2002, *slip op.* at 25 ("There was no error instantly in allowing the Commonwealth to more

fully develop Defendant's cooperation at the time he was taken into custody.").

Appellant also challenges the overruling of his objection to a question posed to another police officer pertaining to the accuracy of a police report of an interview with one of the McKnight children. By way of background, some of the testimony provided by Jayla McKnight at trial was in tension with her preliminary-hearing testimony and her previous responses to a police officer, as reflected in his report. On redirect examination, the prosecutor asked the officer whether his report of the interview with Jayla was verbatim. *See* N.T., Jan. 30, 2008, at 9 ("It is not a written out verbatim statement?"). Defense counsel objected to the question as leading, and the trial court overruled the objection.

As the Commonwealth observes, trial courts maintain discretionary control over the questioning of witnesses, subject to review for abuses. *See Commonwealth v. Beasley*, 504 Pa. 485, 495, 475 A.2d 730, 735 (1984). Questions calling for a "yes" or "no" answer are not necessarily leading; rather, the litmus is the degree of suggestiveness contained in the questioning. *See Commonwealth v. Dreibelbis*, 493 Pa. 466, 476, 426 A.2d 1111, 1116 (1981) ("A leading question has been defined as one which puts the desired answer in the mouth of the witness."); *accord* 81 AM.JUR.2D Witnesses §§ 716–717 (2009).

Here, the question posed was more suggestive than is desirable on the examination of a party's own witness. Nevertheless, the officer already had testified, without objection, that the report of his questioning of Jayla McKnight was in the nature of a summary. *See* N.T., Jan. 30, 2008, at 9. Moreover, there is no serious challenge to the truthfulness of the officer's testimony that the report was not a word-for-word account, which is consistent with common experience. Additionally, the trial court demonstrated its control over the questioning by sustaining a defense objection to leading shortly after the ruling in question. *See id.* at 10. In these circumstances, we discern no abuse of discretion on the part of the trial court.

 Finally, Appellant argues that the trial court erred in denying a motion for judgment of acquittal on counts of interference with the custody of children. *See* 18 Pa.C.S. § 2904(a) ("A person commits an offense if he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so."). On this claim, the trial court opined:

> The Commonwealth's evidence established that, in the middle of the night, Defendant came to the apartment of the victim and her children contrary to a PFA order. Defendant compelled his admission to the apartment then physically assaulted the victim in the presence of three of her children. Defendant took the victim and her three children, ages eight, six, and five, who were not the children of the Defendant from the apartment and drove them to the Neshannock Village housing complex, walked the victim to a secluded location, shot her, [and] returned to the car[.]
>
> \* \* \*
>
> [T]he Commonwealth [thus] presented evidence that the mother was with the children up until the time of her death. The Defendant intentionally murdered the children's' [sic] mother and kept the children with him in a car for the next six days. The intentional act of killing the mother substantially interfered with the custodial control she had over her children. After the murder, the Defendant took the kids with him and drove around in a car with them for six days when he was not privileged to do so. Therefore, this Court finds when the Defendant killed the children's mother and drove off with the kids he substantially interfered with her custodial rights over the children.

*Reed II*, Nos. 10, 11, 12, and 96 of 2002, *slip op.* at 29–31.

Presently, appellant takes the position that one cannot legally interfere with the custody of a deceased person. According to Appellant,

> common sense would say [the interference-with-custody offense] does not apply in homicide cases. If interference

with the custody of children did apply in homicide cases, obviously that would be an issue anytime a parent is murdered. The Appellant does not believe that was the intent of the legislature in drafting the law.

Brief for Appellant at 19.

As previously noted, sufficiency review is undertaken on the facts most favorable to the Commonwealth as the verdict winner. As reflected above, Appellant does not present a traditional sufficiency analysis, but rather, advances a legal argument that interference-with-custody charges should be excluded, broadly, from homicide cases. We reject such position.

While there is force to Appellant's position that it is not possible to disrupt the custody of one who is not living, his argument does not touch upon the trial court's recitation of acts of interference while Ms. Miller remained alive, culminating with the murder. Furthermore, he does not address the court's reference to continuing interference with Ms. Miller's lawful successor(s) in the right of custody.

As such, Appellant's contentions yield no basis for relief.

### Deliberations

 Appellant next argues that the trial court erroneously permitted the shotgun recovered from Ms. Miller's vehicle to be taken into the jury room during deliberations. Appellant recognizes that his claim is governed by an abuse-of-discretion standard, but he emphasizes that judges must consider the possibility of undue emphasis on forms of evidence carrying such potent effect. According to Appellant, the shotgun did not in any way supplement or help explain the Commonwealth's case; rather, he indicates, the purpose of sending it into the jury room was to stir passion.

It is the Commonwealth's position, consistent with the trial court's explanation, that "[t]he process of raising the pistol-grip shotgun to [Ms. Miller's] head and holding it steady pointed at her head while [Appellant] discharged it was a significant component of the proof of the specific intent to

kill." Brief for the Commonwealth at 39. Additionally, the prosecutor did note on the record that the trigger of the shotgun was locked, and no live rounds were being sent into the jury room. *See* N.T., Jan. 31, 2008, at 69.

For a variety of reasons, conveyance of firearms into a jury room generally represents an exception rather than the rule, and the better practice is to confine any necessary examination of firearms by jurors to the courtroom. *See, e.g., United States v. Mascak*, Nos. 01–CR–512–BR, *et al., slip op.*, 2008 WL 3285843, at *9 (D.Or. Aug. 8, 2008) (approving the precautions taken by one trial court, in that it "supervised the display of firearms, allowed the jurors to walk briefly around the well of the courtroom to view the firearms, and did not allow the firearms to be taken to the jury room"). Here, the Commonwealth's proffered justification supporting its request is weak, particularly since there is no evidence that Appellant suffered from any debilitation that might have prevented him from holding and firing the shotgun in a directed manner. Accordingly, we regard this question as a close one.

Nevertheless, the matter was committed to the discretionary prerogative of the trial court, and we decline to find an abuse of that discretion justifying the award of a new trial in this case. *Cf. Commonwealth v. Hobson*, 484 Pa. 250, 254–56, 398 A.2d 1364, 1366–67 (1979) (finding no abuse of discretion in a trial court's decision permitting an exhibit in the form of a handgun to be taken into a jury room).

## Statutory Review

At this juncture, we are required to affirm the death sentence unless we find that: the sentence was the product of passion, prejudice, or any other arbitrary factor; or the evidence fails to support the finding of at least one aggravating circumstance. *See* 42 Pa.C.S. § 9711(h)(3). After reviewing the record, we are persuaded that the sentence imposed upon Appellant was not the product of passion, prejudice, or any other arbitrary factor, but rather, resulted from properly introduced evidence establishing that Appellant intentionally and deliberately killed Ms. Miller, as well as the jurors'

454

appropriate service of their function in capital litigation under the governing statutory scheme. Finally, the evidence was sufficient to support the aggravating factors found by the jury on their plain terms—killing while in perpetration of a felony (kidnapping), *see* 42 Pa.C.S. § 9711(d)(6),[6] and killing while the defendant was subject to a court order restricting his behavior toward the victim (PFA), *see* 42 Pa.C.S. § 9711(d)(18)—in light of the Commonwealth's substantial supporting evidence as detailed above.

The judgment of sentence is affirmed, and the Prothonotary is directed to transmit the complete record of this case to the Governor in accordance with Section 9711(i) of the Judicial Code, 42 Pa.C.S. § 9711(i).

Chief Justice CASTILLE, Justice EAKIN and BAER, Justice TODD, Justice McCAFFERY and Justice ORIE MELVIN join the opinion.

6. The kidnapping convictions related to the McKnight children, as the jury acquitted Appellant on a charge of kidnapping Ms. Miller. *See* N.T., Jan. 31, 2008, at 87.