J-S49036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| STEVEN JOHN GARDNER, JR. | : | |
| | : | |
| Appellant | : | No. 288 MDA 2018 |

Appeal from the Judgment of Sentence January 18, 2018
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0000595-2017

BEFORE:   SHOGAN, J., STABILE, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED SEPTEMBER 20, 2018**

Appellant, Steven John Gardner, Jr., appeals from the judgment of sentence entered by the Court of Common Pleas of Adams County after a jury convicted Appellant of terroristic threats, recklessly endangering another person (REAP), and two counts of simple assault.  Appellant claims the trial court abused its discretion in allowing the prosecution to introduce certain evidence pursuant to Pennsylvania Rule of Evidence 404(b).  We affirm.

Appellant was charged with the aforementioned offenses in connection with his assault of his former fiancée, Stephany Nonemaker ("the Victim"). The following factual background was developed at Appellant's jury trial:

> On May 9, 2017, at approximately 1:00 p.m., Tracy Zimmer was delivering mail at 69 Winslow Court, Gettysburg, Adams County, Pennsylvania and heard a woman screaming at 73 Winslow Court. Ms. Zimmer saw the front door open and heard a woman screaming at the top of her lungs and also heard a man's voice screaming at her and then the door slammed shut with force.  Ms.

_____
*   Former Justice specially assigned to the Superior Court.

Zimmer heard the screaming continue for about ten or fifteen seconds. Ms. Zimmer subsequently called the police.

[The Victim] testified that she lived at 73 Winslow Court, Gettysburg, Adams County, Pennsylvania on May 9, 2017 with [Appellant]. 73 Winslow Court is a three story townhouse and is in a row with other townhouses, with neighbors on both sides of 73 Winslow Court. The Victim testified that on May 9, 2017 she worked at Gettysburg Hospital in the emergency department as a registered nurse and got home from work at approximately 7:00 a.m. At approximately 10:00 a.m. Appellant got into an argument with the Victim and the Victim retreated to the master bedroom and locked the door. Appellant picked the lock, entered the bedroom, pulled the Victim off the bed to the doorway of the bathroom and started kicking and punching the Victim on her arms, chest, back and legs with a closed fist and with his bare feet. Appellant then put both hands around the Victim's neck and choked her. The Victim testified she felt pressure on her neck and it was hard to breath[e]. The Victim attempted to punch Appellant in the groin. Appellant grabbed her foot and put her foot on her neck, applied pressure and the Victim testified that … it was difficult to breath[e]. Appellant continued screaming and yelling at the Victim, pulled the Victim's hair and continued to kick and punch her. This assault occurred on and off for approximately two hours. During the assault Appellant asked the Victim whether the Victim wanted to die today, and Appellant also told the Victim she was going to die today.

Between approximately 12:30 p.m. and 1:00 p.m.[,] the Victim was on the second floor with Appellant and was able to run down to the first floor, unlock the front door and open the door. Appellant grabbed the Victim by the hair and yanked the Victim back into the house before the Victim could get outside. The Victim fell on the floor and Appellant kicked the Victim again. Appellant grabbed the Victim by her hair and forced her upstairs into the living room. The Victim sat down on a chair in the living room. Appellant went into the kitchen, returned to the living room, carrying a handgun and forcefully pressed the loaded handgun to the left temple of the Victim. Appellant held the gun with two hands and told the Victim he was going to kill her. The Victim was crying and begged Appellant not to kill her. Appellant then held the handgun to his own head and told the Victim he was going to kill himself. Appellant then took the handgun back into the kitchen. Appellant returned to the living room, slammed a

coffee table on the floor and the coffee table broke. Appellant threw one of the legs of the coffee table at the Victim's head, which missed the Victim. Shortly thereafter, Cumberland Township Police arrived at the residence and Appellant was subsequently arrested.

Shannon Small, a registered nurse and sexual assault nurse examiner at Gettysburg Hospital, testified concerning her treatment and observations of the Victim on May 10, 2017 at the Gettysburg Hospital. Nurse Small testified concerning visible injuries on the Victim which she documented through photographs and diagrams. On the Victim's back, Nurse Small documented twenty-two separate injuries. On the front of the Victim, Nurse Small documented thirteen separate injuries. On the left and right lateral views of the Victim (the side view), Nurse Small documented eleven injuries. On the Victim's head and neck area Nurse Small documented six injuries. On the Victim's eyes and inside her mouth, Nurse Small documented one injury. Nurse Small testified the visible injuries consisted of bruises, abrasions, and scratches.

Dr. Gregory J. Codori, an emergency room doctor at Gettysburg Hospital for twenty-five years, testified concerning his treatment of the Victim on May 10, 2017. Dr. Codori corroborated the testimony of Nurse Small and testified the Victim suffered multiple contusions, abrasions and scratches over her face, neck, chest, back, and extremities. Dr. Codori testified that the injuries were consistent with blunt force trauma from a punch or a kick.

Sergeant Matthew S. Trostle of the Cumberland Township Police Department testified that on May 10, 2017, he went to the Victim's residence and recovered a [Beretta] Nano 9 mm handgun which had a round in the chamber and a full magazine. The Victim advised Sergeant Trostle that this was the handgun which Appellant used to threaten the Victim. At trial, the Victim identified this handgun as the handgun Appellant pressed to her temple while Appellant threatened to kill the Victim.

Appellant testified that on May 9, 2017 he and the victim were involved in a verbal dispute. Appellant testified that during the verbal dispute the Victim grabbed the handgun and Appellant jumped on top of her to try to get the gun away from the Victim. Appellant testified he was holding the Victim's arms and punched her in the chest to get her to release the handgun. Appellant

grabbed the Victim, threw her to the ground, got on top of her and forced her to release the handgun. Appellant testified he then grabbed the Victim, picked her up, and threw her on the bed. Appellant testified this incident happened in the master bedroom on the third floor of the townhouse.

Appellant testified that this was the only physical altercation he had with the Victim on May 9, 2017. Appellant denied threatening the Victim with the handgun or pressing the handgun up against the Victim's temple. Appellant denied punching or kicking the Victim other than Appellant attempting to take the handgun from the Victim.

In rebuttal testimony, the Commonwealth called Allison Krayo as a witness. Allison Krayo was a prior girlfriend of Appellant and testified concerning a prior [incident] involving Appellant. Prior to Ms. Krayo's testimony, this Court provided the jury with the following cautionary instruction:

> The Court: Before Ms. Krayo testifies, there is an instruction I want to give you concerning her testimony.
>
> The evidence which the Commonwealth is going to present for you is what is known as rebuttal, and it's to rebut evidence that has been presented in the defense case, and this evidence is being offered for strictly a limited [purpose].
>
> It is offered for the purpose of tending to show that [Appellant's] actions in regards to the firearm that is alleged in this case to have been held to the alleged victim's head, and [Appellant] gave his own rendition of what occurred … this evidence is being offered to show that [this] was not an accident … this evidence is offered by the Commonwealth to show [Appellant's] intent in this case.
>
> This evidence that we are going to present must not be considered by you in any way other than for the purpose I have just stated.
>
> You may not regard this evidence as showing [Appellant] is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

> If you do find [Appellant] guilty in this case following my instructions and following all the evidence, that must be based solely on your belief that he committed the crimes in this case, and not because you believe that he has committed other offenses in the past or is a bad person.
>
> Ms. Krayo testified that she dated Appellant between June 2009 and February 2010. Ms. Krayo testified that she and Appellant were in Appellant's bedroom laying on Appellant's bed. Ms. Krayo and Appellant were arguing and Appellant grabbed a handgun, pointed it at Ms. Krayo's face[,] approximately twelve to fifteen inches away from her face and told Ms. Krayo to "shut the fuck up." Ms. Krayo did not threaten Appellant before this incident nor did she touch the handgun. Ms. Krayo testified that this incident occurred near the end of their relationship.

Trial Court Opinion ("T.C.O."), 4/4/18, at 2-5.

At the conclusion of the trial, the jury convicted Appellant of the aforementioned charges. On January 18, 2018, the trial court imposed an aggregate term of 11½ to 23 months' imprisonment with a concurrent seven years' probation. Appellant filed a timely appeal and complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant limits his appeal to challenge the trial court's discretion in permitting the Commonwealth to present evidence pursuant to Pennsylvania Rule of Evidence 404(b). Specifically, Appellant contends that it was error to allow the admission of Ms. Krayo's testimony in light of the timeframe between the acts and the crimes for which Appellant was on trial and also his assertion that the evidence was not relevant to motive, intent, or lack of mistake.

In reviewing a challenge to a trial court's discretion in admitting evidence, we are guided by the following standard:

The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. **Commonwealth v. Hunzer**, 868 A.2d 498 (Pa. Super. 2005). Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. **Id.**

**Commonwealth v. Young**, 989 A.2d 920, 924 (Pa. Super. 2010) (citation omitted).

Moreover, it is well-established that:

[g]enerally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact. **Commonwealth v. Powell**, 598 Pa. 224, 956 A.2d 406, 419 (2008).

**Commonwealth v. Sherwood**, 603 Pa. 92, 114, 982 A.2d 483, 497 (2009).

The Pennsylvania Supreme Court has indicated that a party's challenge to the remoteness of an evidence admitted under Rule 404(b) "generally affects the weight—but not the admissibility—of the evidence; further, the Court has emphasized the deference due to the trial court in the exercise of its discretion." **Commonwealth v. Reed**, 605 Pa. 431, 446-47, 990 A.2d 1158, 1168 (2010). "While remoteness in time is a factor to be considered in

- 6 -

determining the probative value of other crimes evidence under this theory, the importance of the time period is inversely proportional to the similarity of the crimes in question." **Commonwealth v. O'Brien**, 836 A.2d 966, 971 (Pa.Super. 2003) (citation omitted). Our courts have determined that remoteness in time is "another factor to be considered in determining whether a prior incident ... [of abuse] tends to show that a second incident ... [of abuse] was an accident." **Commonwealth v. Donahue**, 519 Pa. 532, 545, 549 A.2d 121, 127–28 (1988) (*plurality*) (finding three years was not unduly remote). **See also Commonwealth v. Luktisch**, 680 A.2d 877 (Pa.Super. 1996) (finding evidence of sexual molestation by defendant that occurred between six and fourteen years prior to the crime charged in the present case was admissible under the common scheme, plan, design or course of conduct exception to the general rule that evidence of uncharged acts is inadmissible against defendant).

Moreover, with respect to probative value, this Court held in **Commonwealth v. Green**, 76 A.3d 575 (Pa.Super. 2013), *appeal denied*, 87 A.3d 318 (Pa. 2014), that the trial court did not abuse its discretion in permitting the admission of evidence that the appellant had pointed a gun at the victim's head "in mere play" two months before the murder, which was probative of the appellant's motive or absence of mistake.

In the instant case, the trial court allowed the prosecution to introduce Ms. Krayo's testimony on rebuttal after Appellant had testified that he had never intentionally threatened the Victim with a handgun, denied pressing the

gun against the Victim's forehead and claimed only to have attempted to grab the handgun to protect himself from the victim.

Although seven to eight years had elapsed between the acts testified to by Ms. Krayo and the crime for which Appellant was on trial, evidence of the prior act was necessary to rebut Appellant's contention that he never had the intent to threaten the Victim with the firearm and that he was merely attempting to remove the firearm from the Victim's grip.

We agree with the trial court that the evidence of Appellant's prior act of recklessly pointing a firearm at close range to his paramour's head in their bedroom after a verbal dispute was not unduly remote and was probative to this issue of motive or absence of mistake. Accordingly, we conclude that Appellant's claim is meritless.

For the foregoing reason, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2018