J-S52030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WALTER PERKINS | : | |
| | : | |
| Appellant | : | No. 1969 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 3, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000598-2015

BEFORE:   PANELLA, P.J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED: APRIL 5, 2021**

Walter Perkins (Appellant) appeals his judgment of sentence entered on

November 3, 2016 in the Court of Common Pleas of Philadelphia.  We affirm.

The trial court recounted the procedural history and underlying facts of

this matter as follows:

> On January 16, 2015, the Appellant was indicted by a Grand
> Jury for: Robbery (F1), Conspiracy – Robbery (F1), Burglary (F1),
> Conspiracy – Burglary (F1), Persons Not to Possess Firearms
> (VUFA § 6105) (F2), Theft (F3), Conspiracy – Theft (F3), Receiving
> Stolen Property (RSP) (F3), Firearms Not to be Carried Without a
> License (VUFA § 6106), and Carrying Firearms in Public in
> Philadelphia (VUFA § 6108) (M1).  On July 17, 2015, the court
> declared a mistrial after the jury was hung on the charges of
> Robbery, Conspiracy – Robbery, Burglary, and Theft.
>
> On January 29, 2016, after a second trial, a jury found the
> Appellant guilty of Robbery, Conspiracy – Robbery, Burglary,
> Conspiracy – Burglary, and two counts of Theft.  On May 6, 2016,

---

[*] Former Justice specially assigned to the Superior Court.

the court sentenced the Appellant to 10-20 years['] incarceration for Robbery, 10-20 years['] incarceration for Burglary to run consecutively to Robbery, 10-20 years of incarceration for Conspiracy – Robbery to run concurrently with Burglary, and 10-20 years for Conspiracy – Burglary to run concurrently with Burglary and Conspiracy – Robbery. The aggregate sentence was 20-40 years of incarceration.

On May 11, 2016, the Appellant filed a Motion for Reconsideration of Sentence. On June 3, 2016, the Appellant filed a pro se Notice of Appeal to [this Court]. On July 14, 2016, the [court] ordered the Appellant to file a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On November 3, 2016, the court granted the Appellant's Motion for Reconsideration and resentenced the Appellant on the Burglary charge to 5-10 years of incarceration for an aggregate sentence of 15-30 years of incarceration.

On November 10, 2016, the Appellant filed a second Notice of Appeal to [this Court]. On December 5, 2016, the court ordered the Appellant to file a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b), and on June 27, 2017, the Appellant filed a Statement. The court filed its responsive Opinion on September 20, 2017. However, on October 27, 2017, the Appellant filed a petition to discontinue his appeal, and [this Court] granted his petition on October 31, 2017.

On July 25, 2018, the Appellant filed a PCRA Petition, and on April 2, 2019, the Appellant filed an Amended PCRA Petition alleging that his original appellate counsel had "discontinued Petitioner's appeal against his wishes." On June 27, 2019, the PCRA [court] granted the Appellant's Petition to accept his post-sentence motion *nunc pro tunc* as timely filed. On July 12, 2019, the Appellant filed a third Notice of Appeal to the Superior Court. On August 9, 2019, the court ordered the Appellant to file a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b), and on August 18, 2019, the Appellant filed a Statement raising the following issues:

1. [The trial court] erred, abused its discretion, and violated [Appellant's] due process rights under the state and federal constitutions when [it] granted the Commonwealth's eleventh-hour objection to the introduction of a prison tape by the defense[ – an] objection which the Commonwealth made in front of the jury

just before defense counsel hit the play button, where [Appellant] already had been colloquied about his desire not to testify with the understanding that the tape would be played as defense evidence, and where the charging conference had been conducted with [that same understanding,] and where the tape was being offered to complete and/or rebut a prison tape that the Commonwealth had played.

2. [The trial court] abused its discretion and condoned the Commonwealth conducting trial by ambush and denying [Appellant] the ability to present a defense by allowing the Commonwealth to object to the evidence – the playing of a prison tape by defense – in such a covert and disingenuous manner.

3. The evidence was insufficient to sustain a conviction for burglary and conspiracy to commit burglary. The evidence did not show that [Appellant] entered the premises with the intent to commit a robbery. Additionally, the charge of conspiracy was not [made out] for the same reason.

4. There was prosecutorial misconduct in the following instances:

(1) Lead [Detective] Matthew Funk #680 offered false testimony by stating falsely that a text message found on [Appellant's] phone had called for a taxi cab to come to the complainant's address of 2133 South Hicks Street, when the text message from the cab company actually contained a different address . . . . The [Commonwealth] allowed this testimony to go uncorrected.

(2) [Detective Funk] testified that he was not able to lift any identifiable fingerprints. [He] also testified that he did not submit any identifiable fingerprints to be processed . . . . However, during the first trial [Detective Funk] testified that he in fact did get prints and submit them for processing but they came back negative for any identifiable person in their database.

[FACTS]

On [December 10, 2014,] Ronnie Elliot (Complainant) was living at 2133 South Hicks Street [in Philadelphia] with a roommate [named Reo]. The Complainant had had spinal surgery the night before and was waiting to be picked up to go to physical therapy. The Complainant answered a knock at the door and saw the Appellant and another man. After the Complainant asked who

- 3 -

they were, the Appellant asked where Reo was. The Complainant responded that Reo was at work, and the Appellant pushed the door in, knocking the Complainant to the ground.

The Appellant then asked the Complainant where pills and money were in the house, and the Complainant noticed a gun in the Appellant's waistband. The Complainant responded that he did not know what the Appellant was talking about. The Appellant struck the Complainant twice in the head with the gun and asked him where the bags were. The Complainant told him that he did not know where any bags were, and the Appellant proceeded to tie the Complainant up with a phone charging cord. The Appellant and the other male went to the second floor of the house, and the Complainant heard them searching the bedrooms and moving objects around. After the Appellant and the other male gathered items from upstairs, the Appellant called a taxi, cut the phone cord around the Complainant's hands, and left the house carrying several garbage bags of items.

The Complainant then called the police. Officer Leslie Winters arrived first on the scene and took the Complainant's statement. The Complainant told Officer Winters that he overheard the Appellant tell the cab company that they needed to go to 30th Street. Detective John Tocco prepared a photo array the next day, and Sergeant Angel Gonzales showed the photo array to the Complainant. The Complainant identified the Appellant in the photo array as one of the assailants. Once the Appellant was identified, Detective Matthew Funk obtained a search warrant for his last known address, 1344 South 31st Street. Detective Funk contacted the Special Weapons and Tactics (SWAT) unit to execute the search warrant at the house. Once inside the house, Detective Funk went into the basement where he found the Appellant sleeping. The detective also found several garbage bags containing items that were reported taken from the Complainant's house. Lastly, the detective found a toy gun the Commonwealth later identified as the weapon the Appellant used to assault the Complainant.

Trial Ct. Op., 2/4/20, at 1-5 (citations and footnotes omitted).

We now turn to Appellant's first two claims of error, regarding the recorded prison call he sought to admit at trial. Appellant argues that his

constitutional due process rights were violated by its exclusion, both because such exclusion was improper and detrimental to the defense, and because the Commonwealth's move to exclude it amounted to trial by ambush and compromised his decision not to testify, which he claims was made with the understanding that the recording in question would be played for the jury. Appellant's Brief at 17-21.

We review evidentiary decisions for abuse of the trial court's discretion, and absent such abuse, we will not reverse. *Commonwealth v. Kinard*, 95 A.3d 279, 284 (Pa. Super. 2014). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Martinez*, 917 A.2d 856, 859 (Pa. Super. 2007). Appellant cites Pa.R.E. 106, which specifies that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time." Appellant's Brief at 17.

The trial court reports that the recording, in which Appellant explains to his girlfriend his decision to plead guilty to RSP, was submitted to prove the truth of the matter asserted and was therefore hearsay. Trial Ct. Op. at 6. Appellant asserts that the recording was admissible under the "business

records" exception to the hearsay rule, codified at Pa.R.E. 803(6) and under Rule 106. Appellant's Brief at 17-19. Further, the trial court points out that our Supreme Court has held that "[w]here a defendant seeks at trial to introduce his own statements made at the time of arrest to support his version of the facts, such testimony is clearly offensive to the hearsay rule." Trial Ct. Op. at 6-7, *quoting* **Commonwealth v. Murphy**, 425 A.2d 352, 356 (Pa. 1981). Further, the trial court cited this Court's opinion in **Commonwealth v. Benson**, 10 A.3d 1268 (Pa. Super. 2010), in which this Court held that defendants may not elicit testimony from a third party about his own statements when he himself refuses to testify and subject himself to cross-examination. Trial Ct. Op. at 6.

Although Appellant argues that the business records exception applies, and that he should have been allowed to play the recording to augment the allegedly incomplete picture painted by the Commonwealth's recording of Appellant telling his girlfriend that he was attempting to provide for her, the recording Appellant submitted was actually from another conversation entirely. **See** Trial Ct. Op. at 7. The trial court also points out that Appellant did not attempt to introduce the recording contemporaneously with the Commonwealth's recording, but instead waited until the Commonwealth had rested before attempting to introduce his preferred recording. **Id.** at 8. Finally, the trial court points out that defense counsel was unable to identify an applicable hearsay objection at trial, so this entire claim of error is arguably

waived. *See Id.*; *see* N.T., 1/28/16, at 86 ("At the side bar I showed the defense attorney, for the record, twenty-six hearsay exceptions and I asked him to point to one in which it would come under and the defense attorney was unable to do it.").

Of course, any defendant has an ironclad right either to testify or to decide not to testify, and to have the jury instructed that no adverse inference may be derived from the exercise of his silence.[1] However, a defendant may not use an exception to the hearsay rule to put their testimony before the jury without undergoing cross-examination. This is a manipulation of the rules of evidence to have one's cake and eat it too – to have the advantage of having testified by putting one's own account before the jury, but to prevent the Commonwealth from probing that account via cross-examination. Why not forbid the Commonwealth from cross-examining a testifying defendant altogether? Where this is the goal of the defense, it itself is an offense to the Constitution, and not, as Appellant argues, a Constitutional guarantee.

Appellant's own argument betrays that this was precisely his goal. *See* Appellant's Brief at 18.[2] Likewise, his argument that the Commonwealth's

---

[1] *See Commonwealth v. Lewis*, 598 A.2d 795 (Pa. 1991).

[2] "In fact, Appellant was colloquied about not testifying, and the charging conference had been conducted with the understanding the tape would be played as Defense evidence." *Id.* Of course, Appellant's colloquy was not a blood oath; he was still free to assert his right to testify in his defense when the trial court excluded the recording.

objection constituted trial by ambush is unfounded, where he did not establish at the time of trial that the proffered evidence was even admissible. Objections must be timely lodged, and the Commonwealth's adherence to that rule does not constitute an ambush. There is no abuse of discretion here.

Next, Appellant argues that his convictions for burglary and conspiracy to commit robbery are infirm, as the evidence presented was insufficient to establish his intent to commit a robbery when he charged into the complainant's home.

When reviewing a challenge to the sufficiency of the evidence supporting a conviction, we analyze:

> whether the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to enable a reasonable [fact finder] to find every element of the crime beyond a reasonable doubt. . . . In applying this standard, we bear in mind that the Commonwealth may sustain its burden by means of wholly circumstantial evidence; that the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and that the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence.

***Commonwealth v. Reed***, 990 A.2d 1158, 1161 (Pa. 2010) (citations omitted). Under 18 Pa.C.S. § 3502(a)(1)(i), when, "with the intent to commit a crime therein, the person enters a building or occupied structure . . . adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein" they commit burglary. Appellant argues that the Commonwealth did not establish intent. Appellant's Brief at 23. The trial

court points out that Appellant pushed his way in, knocking the complainant over, struck the complainant twice in the head, and asked the complainant to specify the location of valuable items in the house. Trial Ct. Op. at 10. Stolen property was found with Appellant when the warrant was executed and he was arrested. *Id.* at 5. We must agree that this evidence is sufficient to support these convictions.[3] This claim fails.

Finally, Appellant argues that the Commonwealth committed misconduct during his trial because of certain variances in Detective Funk's testimony between his first trial, which ended in mistrial, and his second. Appellant's Brief at 27. Counsel acknowledges that there was no contemporaneous objection. *Id.* at 27, n.3. The trial court concludes, for this reason, that the claim is waived. Trial Ct. Op. at 15, 18-19. We must agree. *See Commonwealth v. Baumhammers*, 960 A.2d 59, 73 (Pa. 2008) "it is axiomatic that issues are preserved when objections are made timely to the error or offense").

Judgment of sentence affirmed.

---

[3] Appellant also argues that the photo array in which the complainant identified him was unduly suggestive and tainted. Appellant's Brief at 23. This claim was not mentioned in Appellant's statement per Pa.R.A.P. 1925(b) and is therefore waived.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary

Date: 4/5/21