**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KINTE FORD | |
| Appellant | No. 515 EDA 2016 |

Appeal from the Judgment of Sentence dated October 5, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003558-2013

BEFORE: BENDER, P.J.E., DUBOW, J., and SOLANO, J.

MEMORANDUM BY SOLANO, J.:         **FILED JUNE 27, 2017**

Appellant Kinte Ford appeals from the judgment of sentence following a jury trial and convictions for rape by forcible compulsion, aggravated assault, sexual assault, and terroristic threats.[1] Appellant contends that the trial court erred in admitting testimony related to his prior abuse of the victim in this case, there was insufficient evidence to sustain the verdict, and the verdict was against the weight of the evidence. We affirm.

The trial court set forth the evidence presented at Appellant's jury trial, for which testimony commenced on October 1, 2014, as follows:

> Drelanda Tyler, the complainant, was Appellant's girlfriend on January 25, 2013. She often stayed at Appellant's home . . . with him and his mother, Gloria Ford.

---

[1] 18 Pa.C.S. § 3121(a)(1), 2702(a)(1), 3124.1, and 2706(a)(1), respectively.

Ms. Tyler testified that Appellant had left the home around 11:00 pm on January 25, 2013. In the early morning hours of January 26, around 1:00 am, Appellant came back home while Ms. Tyler was in his room on the third floor, talking with a friend on her cell phone. Ms. Tyler testified that Appellant was upset, because "he basically thought I was on the phone with a guy." The couple briefly argued, then Appellant hit Ms. Tyler on the face with a closed fist, breaking her glasses. He told her to sleep on a couch in the first floor living room instead of upstairs. Ms. Tyler took her phone and charger downstairs.

After a few minutes, Appellant came downstairs, took Ms. Tyler's cell phone from her, and returned upstairs. Ms. Tyler testified that, about three or four minutes later, Appellant came back downstairs and stood in front of Ms. Tyler, cursing and calling her a liar. Appellant then punched her and pinned her on the couch. She tried to get Appellant off her, telling him to "calm down, just stop." Appellant then "thrust" Ms. Tyler around with his hands on her shoulders. At a certain point in the struggle, Appellant pulled down Ms. Tyler's green elastic-waist pants and ripped off her panties. He pulled down his own pants and put his penis inside Ms. Tyler's vagina. Ms. Tyler was trying to kick Appellant off her body, until she eventually "[got] tired and restless of trying to fight [him] off," and "shut down" at a certain point during the assault.

The commotion woke up Ms. Ford. She came out of her room. In her statement to Detective Jenkins, Ms. Tyler said that Ms. Ford "came all the way downstairs and got [Appellant] off [her] while [they] were having sex." At trial, however, Ms. Tyler testified that Appellant had actually pulled his penis out and "fixed himself" before his mother approached the top of the stairs. Ms. Ford came downstairs and went into a closet to get "something metal . . . a bat or a golf club." Ms. Ford then took Ms. Tyler upstairs to the third floor in order to keep her away from Appellant, who was "still pissed off flying through the house, pacing back and forth, up and down the stairs." Ms. Tyler sat down on Ms. Ford's bed. Appellant came upstairs and began arguing with his mother as she blocked him from entering through the doorway. Ms. Tyler stood up behind Ms. Ford. Appellant threw a left fist at Ms. Tyler's right eye, followed by a right fist to her forehead. Ms. Tyler's forehead was cut, causing blood to drip down her face and onto her clothes. Ms. Ford told

Appellant to leave and took Ms. Tyler into the bathroom, where she gave her a rag for the blood on her face.

Ms. Ford exited the bathroom, leaving Ms. Tyler in there and closing and locking the door behind her. Shortly thereafter, Appellant began hitting the door, eventually busting through it. Appellant balled up his fist and made a threatening jump at Ms. Tyler before finally leaving the house. Ms. Tyler testified that Appellant had his hands in his pockets, and she later told detectives that Appellant was holding a gun. On his way out of the house, Appellant touched Ms. Tyler's temple and said "I'll blow your brains out."

Once he left, Ms. Ford drove Ms. Tyler to her best friend Latiya's house . . . . Around 3:30 am, Ms. Ford dropped Ms. Tyler off near the McDonald's . . . , about halfway to Latiya's house. Once she got to the house by foot, Ms. Tyler "banged on the door" but Latiya did not answer. One of Latiya's neighbors eventually opened the door and let Ms. Tyler sleep in a spare room for the night.

Trial Ct. Op., 7/25/16, at 2-4 (citations to the trial transcript omitted, brackets in original).

Ms. Tyler also testified that she was nervous when Appellant first became angry and took her telephone, because Appellant had physically abused her during arguments in the past. N.T., 10/1/14, at 16. That evidence was allowed pursuant to a pretrial order by the trial court that granted a motion by the Commonwealth to admit evidence of Appellant's prior bad acts.[2] Ms. Tyler testified that Appellant would frequently hit her over the course of their two year relationship (which commenced when she

_____

[2] *See* Pa.R.E. 404(b)(3) (requiring advance notice by prosecutor of intent to use evidence of prior bad acts in criminal cases). The trial court's order was entered following a hearing held on the motion on August 25, 2014, and September 12, 2014.

was nineteen years old, and Appellant was 34 or 35), but that she never reported Appellant to the police or sought medical treatment. *Id.* at 22-23, 32-34. Ms. Tyler did not report the instant crime until her friend called the police the following day. *Id.* at 38-39.

The trial court's narrative of the evidence continues:

On January 26, uniformed officers brought Ms. Tyler into Special Victims' Unit for an interview. After the interview, Ms. Tyler went to Philadelphia Sexual Assault Response Center (PSARC) for an examination. Nurse examiner Karen Doughtery observed an abrasion, laceration and tenderness on Ms. Tyler's head; swelling, a bruise, and tenderness on her eyes; abrasion and tenderness on her mouth; bruising and swelling with tenderness to her right eye lower lid; an approximate 1 cm linear laceration to the forehead above the eyebrow with tenderness; a 3 cm scratch-like wound to the left face and orbit (the area that surrounds the eye); and an approximate half centimeter abrasion to the upper lip and gum.

Acid phosphatase, a component of human seminal fluid, was inconclusive in all the swabs from Ms. Tyler's sexual assault kit. Neither P30 (another component of human seminal fluid) nor sperm was found on any of the swabs. A brown stain, similar in appearance to blood, was found on the outside of Ms. Tyler's sweat pants. Additionally, microscopic examinations found sperm on Ms. Tyler's torn thong-style panties. Lissette Vega of the Philadelphia Police DNA lab concluded that Appellant, to a reasonable degree of scientific certainty, is the source of the sperm. However, there are no tests that can be performed to conclusively determine whether a rape occurred, due to the physical nature of genital tissue.

Ms. Ford's testimony conflicted with Ms. Tyler's on several points. She testified that Ms. Tyler came downstairs from the third floor back bedroom (Appellant's bedroom) around 2:00 am and knocked on her door, asking if she could sleep on the couch downstairs. Her eyes were bloodshot "like she was drinking." She told Ms. Ford that she couldn't sleep and that she was waiting for Appellant to come home. Ms. Ford testified that Ms. Tyler said "I'm waiting for [Appellant] to come in. I know he's

- 4 -

messing with another girl . . . I'm going to wait to see when he gets in here because he's going to get his." The two women stayed in Ms. Ford's room talking for 15 to 20 minutes.

Ms. Ford testified that Appellant came home some time between 2:15 and 2:30 am. When they heard him come home, Ms. Tyler got up off the bed, "ranting and raving" and saying "here comes that mother fucker." Appellant came upstairs and asked what was the matter. Ms. Ford testified that she was standing in the doorway between Ms. Tyler (in the room) and Appellant (in the hallway). Ms. Ford asked Appellant to leave because it was 2:30 am and she didn't want any arguments starting in her house. Before he walked away, Ms. Tyler reached over Ms. Ford "to try and hit him and scratch him." Ms. Ford testified that she backed up and stumbled and fell on Ms. Tyler, accidentally causing Ms. Tyler to hit her head on a dresser by the bedroom door. Ms. Ford took Ms. Tyler to the bathroom and got her a cold rag for her face. Ms. Ford testified that she never grabbed a golf club from the closet. She also testified that she never saw her son downstairs or having intercourse with Ms. Tyler that evening.[3]

Trial Ct. Op., 7/25/16, at 4-6 (citations to the trial transcript omitted, brackets in original).

On October 3, 2014, the jury convicted Appellant of the aforementioned crimes. The jury returned a verdict of not guilty of rape by threat of forcible compulsion and unlawful restraint.[4] On October 5, 2015, Appellant was sentenced to an aggregate term of seventeen and one-half to

---

[3] Ms. Ford also testified that Ms. Tyler never previously told her that Appellant ever threatened her, and that this was the first time Ms. Ford witnessed them arguing. N.T., 10/2/14, at 94, 107-08.

[4] 18 Pa.C.S. §§ 3121(a)(2) and 2902(a)(1).

thirty-five years' incarceration. Trial Ct. Op. at 1.[5] Appellant filed a post-sentence motion for a new trial on October 13, 2015, which was denied by operation of law on February 11, 2016.[6] Appellant thereafter filed a timely appeal to this Court in which he raises the following issues for our review:

I. Whether the trial court abused its discretion and committed reversible error when it permitted the Commonwealth to proffer evidence of Appellant's purported bad prior acts.

II. Whether the evidence was insufficient as a matter of law such that no reasonable fact finder could have found Appellant guilty of all the charges.

III. Whether the findings of guilty are against the weight of the evidence.

Appellant's Brief at 8.

**Prior Bad Acts**

Appellant claims that the trial court abused its discretion in admitting testimony that Appellant had previously abused the victim, his girlfriend at the time. Appellant's Brief at 12-16. "The admission of evidence is committed to the sound discretion of the trial court and an appellate court may reverse only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. McFadden*, 156 A.3d 299, 309 (Pa. Super. 2017). "An abuse of discretion may not be found merely because an

---

[5] Appellant's sentencing hearing was bifurcated; the first portion took place on August 5, 2015.

[6] The post-sentence motion contended that the verdict was against the weight of the evidence and that the sentence imposed was excessive.

appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Commonwealth v. Hairston***, 84 A.3d 657, 664-65 (Pa.), ***cert. denied***, 135 S. Ct. 164 (2014).

Appellant contends that the admission of evidence of his prior abuse of Ms. Tyler was error for four reasons:

- First, it was not admissible to establish the victim's state of mind, because her state of mind was not contested during trial. Appellant's Brief at 12, 14. Appellant does not contend that Ms. Tyler consented to have intercourse on the evening in question, but rather asserts that he and Ms. Tyler did not have intercourse that evening. Therefore, according to Appellant, testimony of prior abuse (indicating that the victim did not consent to intercourse that evening) was irrelevant. ***Id.*** at 14 (citing ***Commonwealth v. Richter***, 711 A.2d 464, 466 (Pa. 1998)).

- Second, the evidence was not admissible because the prior bad acts were remote in time and did not bear a close enough resemblance to the instant crime. Appellant's Brief at 12-14 (citing ***Commonwealth v. Green***, 76 A.3d 575, 583-84 (Pa. Super. 2013), ***appeal denied***, 87 A.3d 318 (Pa. 2014)). Appellant therefore suggests the acts bore no logical connection to the assault with which he was charged. ***Id.*** at 15 (citing ***Commonwealth v. Ross***, 57 A.3d 85 (Pa. Super. 2012) (*en banc*), ***appeal denied***, 72 A.3d 603 (Pa. 2013)).

•     Third, the evidence lacks indicia of reliability because there was no evidence corroborating that the acts actually occurred. Appellant's Brief at 15-16 (citing *Commonwealth v. Aikens*, 990 A.2d 1181, 1185 (Pa. Super.), *appeal denied*, 4 A.3d 157 (Pa. 2010); *Commonwealth v. Camperson*, 612 A.2d 482, 483 (Pa. Super. 1992), *appeal denied*, 622 A.2d 1374 (Pa. 1993)). According to Appellant, Ms. Tyler did not offer details regarding any specific incident or a time-frame for the alleged abuse. *Id.* at 13-14. She did not report any of the alleged abuse to law enforcement, sought no medical treatment, and did not produce any eyewitnesses. *Id.* at 16. Appellant observes that his own witness, Ms. Ford, rebutted the victim's testimony regarding the abuse. *Id.* And, according to Appellant, the fact that the victim was waiting for him at his mother's house on the night of the incident indicates that the alleged prior abuse was fabricated. *Id.* at 14.

•     Overall, Appellant complains that Ms. Tyler's testimony about the prior bad acts was overly prejudicial as it "beckon[ed] the jury to conclude that because Appellant may have engaged in assaultive behavior on prior occasions, he likely did so at the time in question, which is the use explicitly precluded by Pennsylvania Rule of Evidence 404(b)." Appellant's Brief at 12.

Rule 404(b) of the Rules of Evidence provides, in relevant part:

(b)   *Crimes, Wrongs or Other Acts*.

    (1)  *Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

The Supreme Court has summarized:

Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact. [*Id.*; *accord*, Pa.R.E. 403.[7]]

*Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009), *cert. denied*, 559 U.S. 1111 (2010).

To be admissible under the motive exception in Rule 404(b)(2), "there must be a specific logical connection between the other act and the crime at issue which establishes that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." *Ross*, 57 A.3d at 100 (quotation marks and citation omitted). For example, in *Ross*, evidence of abuse of the defendant's former sexual partners was

---

[7] Rule 403 provides: "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

deemed inadmissible to show motive where the killing of the victim could not have been said to have resulted from his prior abuse of other women. *Id.* at 100-01. In contrast, evidence of previous confrontations evidencing hostility between a particular defendant and victim are typically admissible to prove the defendant's motive to commit a new criminal act against the same victim. *See, e.g.*, *Commonwealth v. LaCava*, 666 A.2d 221, 229 (Pa. 1995) (evidence of prior drug activities admissible to show motive by way of showing the history of the defendant's hostile relationship with the police officer he killed); *Commonwealth v. Martin*, 387 A.2d 835, 838 (Pa. 1978) (evidence of prior assault and robbery admissible to prove motive for defendant's later killing of a man who struck him with a chair during the assault and robbery).[8]

The list of exceptions in Rule 404(b)(2) ("motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident") is not exhaustive. *Commonwealth v. Brown*, 52 A.3d 320, 325 (Pa. Super. 2012), *appeal denied*, 62 A.3d 377 (Pa. 2013).[9] Another

_____

[8] We may cite cases predating the enactment of the Pennsylvania Rules of Evidence to the extent they are in accord with the Rules. *Commonwealth v. Aikens*, 990 A.2d 1181, 1185 n.2 (Pa. Super.), *appeal denied*, 4 A.3d 157 (Pa. 2010).

[9] Recently, in *Commonwealth v. Hicks*, 156 A.3d 1114 (Pa. 2017), a plurality of the Supreme Court observed that "evidence of prior bad acts, while generally not admissible to prove bad character or criminal propensity, is admissible when proffered for some other relevant purpose so long as the probative value outweighs the prejudicial effect." 156 A.3d at 1125, quoting
*(Footnote Continued Next Page)*

exception is the common law "same transaction" or "*res gestae*" exception. *Id.* at 326. This exception is applicable in "situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development." *Id.* Or, put another way, the exception applies to prior bad acts "which are so clearly and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances, and so could not be excluded on the presentation of the case before the jury without the evidence being rendered thereby unintelligible." *Id.* at 330–31 (emphasis omitted); *see also* *Commonwealth v. Dillon*, 925 A.2d 131, 139 (Pa. 2007) (evidence admissible under the *res gestae* exception so that the events of the crime and resulting prosecution did not appear to the jury to be in a vacuum).

Evidence of prior domestic abuse between a victim and defendant has been held to be admissible under several exceptions, including both *res gestae* and motive. For example, in *Sherwood*, 982 A.2d at 497, the victim's mother testified that on several instances prior to the fatal attack on the victim, her daughter had related that she had been struck by the defendant. This evidence was admissible under the *res gestae* exception as "relevant to help establish the chain of events and pattern of abuse that

*(Footnote Continued)* ───────────

*Commonwealth v. Boczkowski*, 846 A.2d 75, 88 (Pa. 2004). The Court in *Bockowski* added, "This Court has recognized many relevant purposes, other than criminal propensity, for which evidence of other crimes may be introduced"). 846 A.2d at 88 (citations omitted).

eventually led to the fatal beating," and also "to show intent, lack of mistake or accident, ill-will, malice, and the nature of [the defendant's] relationship with [the victim]." *Id.*

Similarly, in *Commonwealth v. Drumheller*, 808 A.2d 893 (Pa. 2002), *cert. denied*, 539 U.S. 919 (2003), evidence of the defendant's prior abuse of the victim was admissible to show "the chain or sequence of events that formed the history of the case, is part of the natural development of the case, and demonstrates [the defendant's] motive, malice, intent, and ill-will toward [the victim]." *Drumheller*, 808 A.2d at 905; *see also Commonwealth v. Powell*, 956 A.2d 406, 419-20 (Pa. 2008) (evidence of prior abuse of victim by defendant admissible under the *res gestae* exception to help establish "the chain of events and pattern of abuse," and also to show the defendant's "intent and malice and the nature of his relationship with [the victim]"), *cert. denied*, 556 U.S. 1131 (2009).[10]

_____

[10] *See also Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012) (evidence that mother's boyfriend disciplined two-year-old child by beating her was admissible to show "ill will, motive, malice, or the nature of the relationship between the defendant and the decedent"); *Commonwealth v. Jackson*, 900 A.2d 936, 941 (Pa. Super. 2006) ("The evidence suggests that the abuse by Appellant of the victim continued to escalate until Appellant ultimately murdered the victim. The challenged evidence shows the chain or sequence of events which formed the history of the case, is part of the natural development of the case, and demonstrates Appellant's motive, malice, intent, and ill-will toward the victim"). Evidence of previous domestic abuse is particularly relevant in homicide cases. *See Commonwealth v. Chandler*, 721 A.2d 1040, 1044 (Pa. 1998) ("Evidence concerning the previous relations between a defendant and a homicide victim is relevant and admissible for the purpose of proving ill will, motive or
*(Footnote Continued Next Page)*

Evidence of a defendant's prior assault of a victim is particularly relevant when necessary to prove that a rape victim did not consent to have sex. **See Commonwealth v. Barger**, 743 A.2d 477, 481 (Pa. Super. 1999) (*en banc*) ("evidence of [defendant's] prior abusive and intimidating behavior directed at victim and victim's mother were properly admitted to prove [victim's] lack of consent to [defendant's] sexual contact with her").[11] Evidence of prior bad acts is likewise admissible in a rape case to prove force or threat of harm when the defendant is facing such charges. **See Richter**, 711 A.2d at 466-67 (past history of physically abusive conduct towards the victim was admissible to prove the element of forcible compulsion or threat of forcible compulsion); **see generally Commonwealth v. Berkowitz**, 641 A.2d 1161, 1164-65 (Pa. 1994) (stating that when the defendant is charged with rape by forcible compulsion, the Commonwealth must prove more than a lack of consent).

In order to be deemed sufficiently probative, the alleged prior bad acts must not be too far removed in time and place from the crime at issue.

_(Footnote Continued)_ _____

malice. . . . This includes, in particular, evidence that the accused physically abused his or her spouse" (brackets omitted)). However, Appellant has not cited any authority or otherwise suggested that admission of prior-abuse evidence is limited only to homicide cases. Indeed, Appellant relies on **Green**, **supra**, 76 A.3d at 583-84, a homicide case, and argues its applicability in this non-homicide setting. **See** Appellant's Brief at 13.

[11] In **Barger**, the evidence of past abuse was also deemed relevant to explain why the victim delayed in reporting the crime to her guidance counselor. 743 A.2d at 480-81.

***Commonwealth v. Reed***, 990 A.2d 1158, 1168 (Pa. 2010). In examining

the probative value of the acts,

> courts must consider factors such as the strength of the "other
> crimes" evidence, . . . the time lapse between crimes, the need
> for the other crimes evidence, [and] the efficacy of alternative
> proof of the charged crime[.]

***Brown***, 52 A.3d at 326–27 (quoting McCormick, *Evidence* § 190 at 811 (4th

ed.1992).[12] However, no bright line for remoteness exists. ***See Reed***, 990

A.2d at 1168 (approving the admissibility evidence of prior abuse occurring

over two-and-one-half months, and citing ***Commonwealth v. Ulatoski***,

371 A.2d 186, 191-92 (Pa. 1977) (evidence of prior abuse occurring

seventeen months prior to homicide was admissible) and ***Drumheller***, 808

A.2d at 905-06 (evidence of abuse thirty-four months prior to murder was

admissible)), ***cert. denied***, 562 U.S. 1020 (2010); ***Commonwealth v.***

***Odum***, 584 A.2d 953, 955 (Pa. Super. 1990) (citing ***Commonwealth v.***

***Patskin***, 93 A.2d 704, 712 (Pa. 1953), ***cert. denied***, 347 U.S. 931 (1954),

for the proposition that evidence of domestic abuse seventeen years prior to

wife's murder is not too remote). Arguments related to the remoteness of

the acts generally go to the weight, and not the admissibility, of the prior

---

[12] ***But see Green***, 76 A.3d at 583-85 (explaining that the common law *res gestae* exception requires that the acts be closely temporally related, but that the motive exception does not; holding therefore that evidence that a defendant had previously threatened his girlfriend (who he later shot in the head), by pointing a gun at her head two months prior to the killing was not admissible under the *res gestae* exception but was admissible to show motive "because it tended to demonstrate Appellant's jealous and overly-possessive attitude with respect to the victim").

bad acts evidence. ***Ulatoski***, 371 A.2d at 191; ***accord Reed***, 990 A.2d at 1168.[13]

The Commonwealth need not prove beyond a reasonable doubt that the prior bad acts actually occurred. ***Commonwealth v. Ardinger***, 839 A.2d 1143, 1145-46 (Pa. Super. 2003). And whether the acts resulted in criminal charges is not typically germane to their admissibility. ***Chandler***, 721 A.2d at 1044 n.7. Rather, "substantial evidence" of the prior bad acts, such as eyewitness testimony, must exist in order for that evidence to be admissible. ***See Odum***, 584 A.2d at 956. Once deemed admissible, the general reliability of the evidence establishing the bad acts is a question for the fact finder. It is for this reason that the failure of a victim to make a timely report of prior abuse bears upon the weight of the evidence establishing that the prior abuse occurred, and not the admissibility of that evidence. ***Commonwealth v. Lane***, 555 A.2d 1246, 1250-51 (Pa. 1989).

Finally, in evaluating the prejudicial nature of the evidence, a court should be guided by the following:

---

[13] There is an additional requirement for a close similarity between the prior bad acts and instant crime when the act is admitted to prove a common scheme or plan, the identity of the perpetrator via a *modus operandi*, or the absence of mistake or accident. ***See Commonwealth v. Kinard***, 95 A.3d 279, 295 (Pa. Super. 2014); ***Ross***, 57 A.3d at 102-04; ***see also Hicks***, 156 A.3d at 1129 (evidence of other crimes must be sufficiently similar to instant crime when admitted to prove lack of accident or identity). Because the prior bad acts in the instant case were admitted under the motive and *res gestae* exceptions, the resemblance between the prior bad acts and instant crime is not in issue here.

[E]vidence will not be prohibited merely because it is harmful to the defendant. Exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. . . .

This court has stated that it is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." [*Commonwealth v.*] *Lark*, 543 A.2d [491,] 501 [(Pa. 1988)]. Moreover, we have upheld the admission of other crimes evidence, when relevant, even where the details of the other crime were extremely grotesque and highly prejudicial. *See Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835, 841 (1989) (upholding the trial court's admission of evidence that the defendant had committed a prior rape, including testimony from the prior rape victim); *see also Commonwealth v. Gordon*, 543 Pa. 513, 673 A.2d 866, 870 (1996) (allowing evidence of defendant's previous sexual assaults). . . .

In deciding whether the danger of unfair prejudice and the like substantially outweighs the incremental probative value, a variety of matters must be considered, including . . . the degree to which the evidence probably will rouse the jury to overmastering hostility.

*Commonwealth v. Page*, 965 A.2d 1212, 1220-21 (Pa. Super. 2009) (quotation marks, brackets, and some citations omitted), *appeal denied*, 74 A.3d 125 (Pa. 2013).

Applying the foregoing precepts to the instant facts, the trial court found Ms. Tyler's testimony about past abuse to be admissible to establish the nature of the relationship between her and Appellant, Ms. Tyler's state of

mind, and "the presence of ill will, malice, or motive." Trial Ct. Op. at 7. The

trial court explained that —

> . . . Ms. Tyler's statements regarding Appellant's prior abusive
> behavior towards her during the course of their relationship was
> deemed relevant to establish Ms. Tyler's state of mind and the
> res gestae of the relationship. This court determined that the
> probative value of this testimony outweighed any prejudicial
> effect. Moreover, defense counsel was given the opportunity to
> cross-examine Ms. Tyler regarding the alleged abuse. For these
> reasons, it was not an abuse of discretion to allow Ms. Tyler to
> testify to previous acts of violence committed by Appellant
> during the course of the relationship.

*Id.* at 7-8.

We agree with the trial court that it did not abuse its discretion. The

victim's testimony was necessary to establish Appellant's motive and the

dynamic of the relationship between them, so that the events of the case

would not appear in isolation. **Sherwood**, 982 A.2d at 497; **Powell**, 956

A.2d at 419-20; **Drumheller**, 808 A.2d at 905. Because Appellant was

charged with rape by threat of forcible compulsion, his prior assaultive

conduct was relevant to establish not only that the victim did not consent,

but that she was intimidated by the acts which had previously transpired.

**Richter**, 711 A.2d at 466-67.[14]

---

[14] We acknowledge that at trial, Appellant never argued that the victim
consented; rather, he argued that the crimes — particularly, the alleged
rape — never occurred. But the Commonwealth, supported by the testimony
of Ms. Tyler, contended otherwise, and it was not error to permit the
Commonwealth to introduce evidence of Appellant's prior bad acts in support
of the Commonwealth's contention.

Nor are we persuaded that the prior acts described by Ms. Tyler were too remote or unconnected to the present case to be of any probative value. Ms. Tyler testified that Appellant would often hit her during arguments, which is similar to what allegedly happened during the assault at issue here. She testified that the prior abuse took place regularly over the course of the two-year relationship between her and Appellant, which culminated in the instant offense; that was not an overly attentuated time-period. **See, e.g.**, **Drumheller**, 808 A.2d at 905-06 (evidence of abuse dating thirty-four months prior to alleged crime was not overly remote).

Appellant's assertion that the testimony was inadmissible as unreliable is likewise meritless. The Commonwealth presented the victim's first-hand account of the abuse by putting her on the witness stand. Her testimony provided substantial evidence to be considered by the fact-finder. **Odum**, 584 A.2d at 956. The fact that Ms. Tyler had never previously reported the abuse or filed criminal charges against Appellant is irrelevant to the admissibility of her testimony. **Chandler**, 721 A.2d at 1044 n.7; **Lane**, 555 A.2d at 1250-51. Appellant was able to cross-examine Ms. Tyler on the veracity of her testimony and to challenge Ms. Tyler's story before the jury. It was for the jury to believe or disbelieve Ms. Tyler's testimony and to accord it whatever weight it found appropriate in light of any other evidence that did or did not corroborate it. **Lane**, 555 A.2d at 1250-51.

Finally, we reject Appellant's argument that the probative value of the testimony, which placed the facts of the current crime in context, was outweighed by the prejudicial nature of that evidence under Pa.R.E. 404(b)(2) and 404(3). Ms. Tyler's testimony that Appellant has previously struck her during the course of an argument does not involve the sort of grotesque details likely to "rouse the jury to overmastering hostility." **Page**, 965 A.2d at 1220-21. And her testimony describing that previous, less egregious abuse by Appellant would not be any more likely to inflame the jury into making an improper decision than her testimony about the current, more serious incident would. The jury was free to disbelieve any or all of Ms. Tyler's testimony.

Furthermore, any prejudice from evidence of this type can usually be ameliorated by an appropriate jury instruction. **See Sherwood** 982 A.2d at 497-98 (probative nature of prior bad acts evidence was not outweighed by its prejudicial effect where the trial court gave the jury a cautionary instruction to prevent considering the evidence as proof of defendant's bad character or criminal tendencies); **Drumheller**, 808 A.2d at 906 (court did not abuse discretion in admitting prior bad acts evidence when it instructed the jury that the evidence "could only be used to demonstrate the chain or sequence of events that formed the history of the case and [the defendant's] motive, malice, intent, and ill-will"); **Richter**, 711 A.2d at 467 (stating that when evidence of prior bad acts has the potential to cause unfair prejudice,

the evidence should "be accompanied by a cautionary instruction which fully and carefully explains to the jury the limited purpose for which that evidence has been admitted"). We presume that a jury will follow a trial court's instructions and that any potential prejudice will thereby be removed. *Drumheller*, 808 A.2d at 906.

Appellant was invited to request such an instruction here, but explicitly declined to do so. Prior to charging the jury, the following exchange took place between Appellant's counsel and the trial court:

> The court: In terms of jury instructions, you saw the instructions the Commonwealth gave me, do you have any objection to those?
>
> [Appellant's counsel]: I don't. I am not requesting a prior bad acts instruction. I don't know if the Commonwealth is, I'm not at this point.
>
> [The Commonwealth]: That's fine, if the defense doesn't want that instruction.
>
> The court: That's fine.

N.T., 10/2/14, at 119-20. After the trial court charged the jury, the court again asked counsel:

> The court: If I can put something on the record for a minute. It's my understanding, [Appellant's counsel], that you did not want me to say anything regarding the other crimes evidence in terms of instruction in this case; is that correct?
>
> [Appellant's counsel]: That's correct.
>
> The court: and you discussed that with the defendant; is that correct?
>
> [Appellant's counsel]: That's correct, yes.

- 20 -

The court: And he's in agreement with that?

[Appellant's counsel]: Yes.

The court: And [(to Appellant)] you fully discussed that with [Appellant's counsel?] I'm referring to the instruction to evidence of other criminal conduct that came out from the testimony of the complainant, Drelanda Tyler. Everybody understand that?

[Appellant]: Yes, Your Honor.

The court: Any questions about that instruction at this point?

[Appellant]: No, sir.

*Id.* at 128-29. Having elected to forego a corrective jury instruction, Appellant may not now complain of resulting prejudice.

For all of these reasons, we hold that the trial court did not abuse its discretion in denying Appellant's motion to exclude the evidence of prior abuse.

**Sufficiency of the Evidence**

We review Appellant's second issue in accordance with the following standard of review:

> A claim challenging the sufficiency of the evidence presents a question of law. We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.

*Commonwealth v. McFadden*, 156 A.3d 299, 303 (Pa. Super. 2017). In addition, when an appellant challenges the credibility of the trial evidence or

contradictions presented by the trial evidence, that challenge goes to the weight, not the sufficiency, of the evidence. *See Commonwealth v. Dougherty*, 860 A.2d 31, 36 (Pa. 2004) (argument regarding credibility of witness testimony went to the weight, and not sufficiency of the evidence), *cert. denied*, 546 U.S. 835 (2005); *Commonwealth v. Small*, 741 A.2d 666, 673 (Pa. 1999) (argument related to conflicting witness testimony went to the weight, and not sufficiency of the evidence), *cert. denied*, 531 U.S. 829 (2000).

Appellant argues that the evidence is insufficient because the victim's testimony is "simply not credible." Appellant's Brief at 18. In support, Appellant points to inconsistencies between Ms. Tyler's testimony at trial and the statement she gave to the police and the lack of physical evidence to corroborate her testimony. *Id.* at 18-19. Specifically, Appellant complains that no physical evidence was recovered from the house, from the sexual assault examination, or Ms. Tyler's clothing, and he points out that there was no testimony regarding how the spermatozoa came to be on Ms. Tyler's underwear. Appellant's Brief at 19. Additionally, Appellant emphasizes that the testimony by his mother, Ms. Ford, was contrary to much of Ms. Tyler's testimony. *Id.* at 19-20.

These arguments by Appellant address the weight, not the sufficiency, of the trial evidence. *Dougherty*, 860 A.2d at 36; *Small*, 741 A.2d at 673. By failing to formulate an argument founded upon legal authority and

demonstrating in what manner the evidence presented at trial failed to establish the specific elements of the crimes of which Appellant was convicted, Appellant has failed to provide any basis upon which he can prevail on his sufficiency claim, and we conclude that no relief is due. In addition, Appellant's failure to set forth a proper sufficiency claim has waived this issue. **See** Pa.R.A.P. 2119(a); ***Commonwealth v. Duda***, 923 A.2d 1138, 1149 n.11 (Pa. 2007) (arguments not sufficiently developed on appeal are waived); ***Commonwealth v. Blango***, 150 A.3d 45, 48 (Pa. Super. 2016), ***appeal denied***, 2017 WL 1374163 (Pa. Apr. 12, 2017).

**Weight of the Evidence**

Finally, Appellant argues that the verdict was against the weight of the evidence. Our standard of review of a challenge to the weight of the evidence is as follows:

> Where the trial court has ruled on a weight claim, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, our review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa. Super. 2014) (brackets, quotation marks, and internal citations omitted), ***appeal denied***, 134 A.3d 56 (Pa.), ***cert. denied***, 132 S. Ct. 106 (2016).

Appellant argues that the verdict was against the weight of the evidence because the victim's testimony was incredible and inconsistent with the lack of physical evidence supporting it. Appellant's Brief at 20-21.

Appellant likens this case to ***In re J.B.***, 69 A.3d 268 (Pa. Super. 2013), ***vacated***, 106 A.3d 76 (Pa. 2014), in which we held that a juvenile defendant's conviction for killing his mother could not stand because there was insufficient circumstantial evidence in the case to support the conviction. ***Id.*** at 21.[15] Appellant claims that here, as in ***J.B.***, "several conclusions that were important to the verdict find little to no support in the record." ***Id.*** In particular, he argues that (1) Ms. Tyler's testimony differed from what she reported to the police after the incident and her grand-jury testimony; (2) no physical evidence of sexual assault was recovered from the residence or following the physical examination of the victim; and (3) the testimony of Ms. Tyler contradicted that of Appellant's mother. ***Id.*** at 21-22.

It is axiomatic that, "In instances where there is conflicting testimony, it is for the jury to determine the weight to be given the testimony. The credibility of a witness is a question for the fact-finder." ***Commonwealth v. Puksar***, 740 A.2d 219, 224 (Pa. 1999), ***cert. denied***, 531 U.S. 829 (2000). We have therefore explained:

> It is well established that this Court is precluded from reweighing the evidence and substituting our credibility determination for that of the fact-finder. . . .

---

[15] Our decision was vacated by the Supreme Court because of issues regarding the defendant's preservation of the weight claim. The Supreme Court did not address our analysis of the merits of the weight issue, but remanded to allow the defendant to file a post-dispositional motion *nunc pro tunc*. ***See J.B.***, 106 A.3d at 99 n.21.

> A new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. In this regard, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court.

*Thompson*, 106 A.3d at 758–59 (citation and internal brackets omitted).

In ruling on Appellant's weight claim, the trial court stated:

> In the instant case, the jury was presented with two conflicting versions of events, and chose to credit the testimony of Ms. Tyler over that of Appellant's mother. The fact that the jury found one witness more credible than another is not shocking to the conscience, and therefore no grounds for relief exist.

Trial Ct. Op. at 9. The court also pointed out that there was corroborating physical evidence in the form of the victim's ripped underwear, which had Appellant's seminal fluid on it, and repeated: "The fact that the jury found Appellant guilty after considering this evidence does not shock one's sense of justice." *Id.*

We find no abuse of discretion. The trial court correctly noted that the bulk of the evidence came down to one witness' testimony against that of another. The trial court aptly considered whether the evidence supporting the verdict was so tenuous, vague, and uncertain that the verdict shocked its conscience and found that it was not. Moreover, any lack of physical

evidence was merely inconclusive,[16] and the sole witness who testified on behalf of Appellant may have easily been deemed incredible by the jury due to her status as Appellant's mother.

Our decision in ***In re J.B.*** is not to the contrary. The juvenile court in that case concluded that J.B. had committed the alleged murder because it found that, other than his two young step-sisters, J.B. was the only person who had been in the house where the murder occurred on the morning it occurred. 69 A.3d at 278. The court based that finding on evidence that, except for footprints of J.B. and his step-sister leaving the house, there were no footprints seen in the snow around the house and there was no testimony that anyone had seen another person enter the building. ***Id***. at 278-79. However, upon a closer review of the record, we discovered that the single witness who testified as to the presence of the children's footprints in the driveway was never asked whether there were other footprints leading up to any of the four entrances to the house, and no witnesses were asked whether anyone else had been seen on the property that morning. ***Id.*** at 279-81. We therefore held that the trial court had palpably abused its discretion in adjudicating J.B. delinquent based on findings of fact that were not supported by the record. ***Id.*** at 281-82. That is a far cry from the instant

---

[16] For example, by the time Appellant's residence was searched, any signs of a struggle or the golf club or gun that Ms. Tyler claimed to have seen may have been removed by the occupants.

case, in which the eyewitness testimony of the victim established the facts of the crime and the jurors had ample evidence on which to base their factual findings leading to a verdict of guilty.

We hold the trial court did not abuse its discretion in denying Appellant's weight claim.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/27/2017